IN THE UNITED STATES DISTRICT COURT
DISTRICT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Kimberly Cary Hevener | ) | |
| 11415 Rosebud Bend Lane #1014 | ) | No. 17-2577 |
| Glen Allen, VA 23059 | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| THE UNITED STATES OF AMERICA | ) | |
| | ) | |

**COMPLAINT**

Plaintiff, Kimberly Cary Hevener by and through her undersigned attorney, alleges that:

1.

Plaintiff is a citizen of the United States and domiciled in Richmond Virginia.

2.

Jurisdiction is alleged under 28 U.S.C. § 1331. Sovereign immunity, to the extent that it applies, is waived by 28 U.S.C. § 1346.

3.

This is an action brought under the Federal Tort Claims Act for *inter alia*, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence in the training and supervision of her attacker, negligence under the Virginia Innkeepers's statute, vicarious liability and negligence under common law for failing to provide a safe environment.

4.

All pertinent acts and actions occurred at Fort Lee, Virginia, property owned and under the control of the by the Department of the Army and the United States Army.

5.

Based on the location of the intentional and negligent torts, the law of Virginia applies to this case.

6.

The Department of the Army is an agency of the Department of Defense and the United States of America.

7.

The United States of America is domiciled within the jurisdiction and venue of this court, the District of Columbia.

8.

On October 1, 2014, plaintiff, Kimberly Hevener (nee Cary) was invited by Sgt. Jacknael Abdiel Vazquez, U. S. Army, 1st Battalion, 75th Ranger Regiment to meet at a local restaurant for dinner.

9.

Sgt. Vazquez, who was based in Georgia, was in the local area due to a temporary duty assignment at Fort Lee, Virginia, acting under orders from the United States issued by its Army.

10.

After completion of dinner, Sgt. Vazquez invited Plaintiff to the base to watch a movie, after assuring her of the safety and security of the base area.

11.

Sgt. Vazquez then induced Ms. Hevener to return to his barracks room to watch the movie.

12.

Plaintiff agreed to accompany him to the barracks room after telling Sgt. Vazquez that she was not interested in any intimate activity and receiving his assurances that she had no need for concern.

13.

As a non-commissioned officer and Ranger in the Army, Vazquez was presumed by plaintiff to support core values of honor and integrity.

14.

Plaintiff believed that Fort Lee, like most military bases, was a safe environment.

15

Plaintiff's sister was in the Air Force during 2006-2011.

16.

Plaintiff often stayed with her sister onboard Lackland, Air Force Base, the Presidio at Monterrey California and Fort Meade Maryland.

17.

The security at Lackland, Air Force Base, the Presidio at Monterrey California and Fort Meade was very visible and provided Plaintiff with confidence that the military would provide a safe environment.

18.

In the wake of a sharp increase in soldier on soldier sexual assaults, plaintiff knew that Army personnel were undergoing sensitivity training.

19.

Vazquez's position as a non-commissioned officer and vaunted Army Ranger made her feel comfortable because of the Army values of Loyalty, Duty, Respect, Selfless, Honor, Integrity and Personal Courage as embodied in the NCO creed and the Ranger creed.

20.

The Army sexual assault prevention training and optimistic reports from Army leaders concerning a zero tolerance policy created the impression of safety on an Army installation.

21.

Based on Vazquez' rank, ranger affiliation, the well publicized sexual assault zero tolerance program and the perceived safety of a military installation, plaintiff had no reason to fear for her safety.

22.

Once alone in his barracks room, Sgt. Vazquez brutally and forcibly raped Ms. Hevener. She did not manifest any form of consent and repeated that she did not wish to have sexual intercourse with him.

23.

Vazquez continued to ignore her protestations.

24.

Given his physical prowess and the reputation of the Rangers, Ms. Hevener had no choice but to submit to Vazquez' forcible acts.

25.

The Army failed to provide any in barracks security, roving or otherwise to respond to

any cry for help. Ms. Hevener was screaming and calling for him to get off of her.

26.

No on or off duty personnel came to her assistance.

27.

After the rape, Vazquez began to cry and stated "I went too far this time" or words to that effect.

28.

Immediately afterwards a hysterical Ms. Hevener, in fear for her life, left the base and returned home.

29.

During the 10-15 minutes it took her to leave the base, there was no sign of any police or security patrols to assist her.

30.

Plaintiff contacted her sister while driving home. When she arrived, her parents took her to the emergency room and notified police.

31.

Plaintiff cooperated with the forensic examination and criminal investigation

32.

The Army negligently failed to detain Sgt. Vazquez. He escaped from Fort Lee and fled back to Georgia, leaving plaintiff in fear.

33.

Upon returning to Georgia, Sgt. Vazquez fatally shot himself.

34.

Plaintiff was assured by Department of the Army personnel that they would provide support and assistance to her.

35.

Plaintiff found these promises comforting and reassuring.

36.

Later the Department of the Army denied support or assistance pursuant to DOD Instruction 6495.02, leaving Plaintiff feeling abandoned and betrayed.

37.

On September 21, 2016, a timely administrative claim via a SF-95 was submitted in this case.

38.

The Army has acknowledged receipt but has failed to adjudicate the claim.

39.

More than six months have passed since the submission of the claim.

40.

A follow up inquiry was sent to the Army on August 20, 2017. No response has been received.

41.

Ms. Hevener suffered physical trauma, emotional distress, post traumatic stress and other injuries and is still under treatment for trauma. She has incurred medical bills and is expected to incur additional medical bills in the future.

42.

**Intentional Infliction of Emotional Distress**

Plaintiff incorporates ¶s1-41 into this cause of action as though plead in extensio.

43.

The United States, through its action of promising support and assistance to plaintiff and later rescinding that promise caused plaintiff severe emotional distress.

44.

The reckless actions of the United States were intended to induce plaintiff to cooperate with the criminal investigation and to prevent potential negative publicity.

45.

The reckless actions of the United States were extreme and outrageous in that they took advantage of the vulnerability of a fragile and frightened rape victim.

46.

It was foreseeable that the crass and cruel actions of the United States were reasonably certain to cause damage to a plaintiff in Ms Hevener's position and state of mind.

47.

The actions of Sgt. Vazquez were attributable to the United States.

48.

The actions of Sgt. Vazquez in forcibly raping plaintiff were intentional and reckless, extreme and outrageous, and reasonably foreseeable to result in emotional distress.

49.

**Negligent Infliction of Emotional Distress**

Plaintiff incorporates ¶s1-48 into this case of action as though plead in extensio.

50.

In the alternative, the actions of the United States, via its officers, agents, employees and/or servants were negligent in informing plaintiff that the United States would provide support and assistance to Plaintiff.

51.

The United States via it officers, agents, employees and/or servants had a duty to know what, if any, support and assistance could be provided to plaintiff.

52.

The United States, via it officers, agents, employees and/or servants, had a duty to communicate truthfully with plaintiff concerning support and assistance, if any, that could be provided to plaintiff.

53.

The United States via it officers, agents, employees and/or servants breached its duty to plaintiff to provide truthful information.

54.

As a result of its breach of duty, the United States, via it officers, agents, employees and/or servants, caused the plaintiff to suffer severe emotional distress.

55.

The United States had a duty to properly train the officers, agents, employees and/or servants in the right and responsibilities to provide support and assistance to sexual assault victims.

56.

The negligent actions of the United States in failing to properly train and supervise their officers, agents, employees and/or servants in the ability of the United States to provide support an assistance breached the duty that the United States had towards citizens sexually assaulted by their soldiers.

57.

**Negligent supervision and training**

Plaintiff incorporates ¶s 1 through 56 into this cause of action as though plead in extensio.

58.

Upon enlistment into he United States Army, the government assumed the responsibility to train and supervise their Soldiers and their on or off duty conduct.

59.

While on active duty a Soldier is on duty 24/7 and he is subject to the orders of his superiors at all times.

60.

A Soldier is under the jurisdiction of the United Sates Armed Forces and subject to the Uniform Code of Military Justice on a continuous basis.

61.

The United States and its Army were aware of a sexual assault problem in its ranks.

62.

The United States and its Army had a duty to protect the citizenry at large and plaintiff in

particular from sexual assaults by its Soldiers.

63.

The United States breached its duties by not properly supervising Sgt. Vazquez and by enabling him to assault plaintiff.

64.

In recognition of their duty, the military assured Congress that they were enforcing a zero tolerance policy on sexual assaults.

65.

The military further committed to Congress that they would supervise their Soldiers and conduct sexual assault prevention training.

66.

Sgt. Vazquez either did not complete this training or the training was inadequate.

67.

The United States via its Army enabled Sgt. Vazquez by allowing him to bring unsuspecting females into the barracks.

68.

The United States via its Army further enabled Sgt. Vazquez for not providing or enforcing a visitor check-in/check out procedure.

69.

The United States via its Army further enabled Sgt. Vazquez by failing to provide adequate supervision of the Soldier.

70.

The United States via its Army further enabled Sgt. Vazquez by encouraging aggressive behavior via the warrior ethos and the Ranger creed.

71.

Decades of failing to aggressively pursue sexual assaults by the United States and its Army further enabled Sgt. Vazquez to conduct sexual assaults.

72.

Based on Sgt. Vazquez's statement that he had gone "too far this time," the Army was aware, or should have been aware, that Vazquez was a sexual predator.

73.

It was reasonably foreseeable that the negligent and enabling actions would result in injury by Sgt. Vazquez to innocent women including plaintiff.

74.

**Negligence under the Virginia Innkeepers's Statute**

Plaintiff incorporates ¶s 1-73 into this cause of actions as though plead in extensio.

75.

Virginia's Innkeeper Statute (Va. Code Ann. § 35.12 8 West) provides protection to guests for the intentional or negligent torts that occur on the property.

76.

At all material times the barracks at Fort Lee, the scene of the rape, was an inn for purposes of the statute.

77.

11

At all material times Sgt. Vazquez was a guest at the barracks. He was provided a room in return for remuneration.

78.

At all material times plaintiff was a guest of Sgt Vazquez, and the United States Army properly present at the inn.

79.

At all material times, plaintiff was not a business invitee.

80.

At all materiel times, the United States, acting through its Army, as an innkeepers, failed to provide honest and competent employees and/or to take reasonable precautions to protect the persons and property of the guests of the hotel.

81.

**Negligence at Common Law**

Plaintiff incorporates ¶s 1 through 80 into this cause of action as though plead in extensio.

82.

A duty for a property owner to provide a safe environment to a guest exists at common law.

83.

Ths duty includes protection from bodily harm to include sexual assault.

84.

This duty extended to the prevention of bodily harm from the officer, employees, agents

12

and servants of the land owner.

85.

Plaintiff was properly admitted to Fort Lee after passing through security and showing her identification.

86.

The security guard was properly informed that Plaintiff was accompanying Sgt. Vazquez.

87.

Under military regulation and custom, upon entry to the base Plaintiff became a guest of the United States, acting through its Army and its installation Commander and subject to the direction of the Installation Commander.

88.

The United States breached its duty to its guest, the Plaintiff, by allowing an unsafe environment.

**<u>Vicarious Liability.</u>**

89.

Plaintiff incorporates ¶s 1 through 88 into this cause of action as though plead in extensio.

90.

At all times, Sgt Vazquez was acting within the scope of his duties.

91.

Sgt. Vazquez was acting on orders issued by the United States via its Army and at all times was subject to the jurisdiction of the Uniform Code of Military Justice.

92.

Sgt. Vazquez was under the complete control of the United States Army at all times material to this incident.

93.

Had the United States not ordered Sgt. Vazquez to Fort Lee, the assault on Plaintiff would never have occurred.

94.

The United States is vicariously liable for Sgt. Vazquez.

WHEREFORE plaintiff prays that after due hearing the United States be found liable for the damages to the plaintiff and that a judgment issue in her favor for nominal, general and special damages as presented at trial.

Respectfully Submitted,

//s// John B. Wells
John B. Wells
DC bar #450165
P. O. Box 5235
Slidell, LA 70469-5235
985-641-1855
JohnLawEsq@msn.com

Service per Rule 4i