UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KIMBERLY CARY HEVENER,          )
                                )
    *Plaintiff*,                 )
                                )
    v.                           )    Civil Case No. 17-2577 (RJL)
                                )
UNITED STATES OF AMERICA,        )
                                )
    *Defendant.*                 )

MEMORANDUM OPINION
(January 29, 2019) [Dkt. # 8]

Plaintiff Kimberly Cary Hevener brought this suit against defendant the United States of America for damages arising from its allegedly negligent supervision of Army Sgt. Jacknael Vazquez, who sexually assaulted plaintiff in his barracks room at Fort Lee, Virginia. *See* Complaint ("Compl.") [Dkt. #1]. Defendant has moved to dismiss the complaint for lack of subject matter jurisdiction and because plaintiff has failed to state a claim upon which relief can be granted. *See* Defendant's Motion to Dismiss ("Def.'s Mot.") [Dkt. # 8] (citing Fed. R. Civ. P. 12(b)(1) and 12(b)(6)). Upon consideration of the pleadings, record, and relevant law, I find that sovereign immunity bars this suit. As such, defendant's Motion to Dismiss is GRANTED, and all claims are dismissed with prejudice.

## BACKGROUND

The alleged events that precipitated this complaint are about as despicable as they come. On October 1, 2014, Army Sgt. Jacknael Abdiel Vazquez, U.S.

Army, 1st Battalion, 75th Ranger Regiment, invited Kimberly Hevener (nee Cary) to meet at a local restaurant near Fort Lee, Virginia. Compl. ¶ 8. Sgt. Vazquez was on a temporary duty assignment at Fort Lee Army Base (hereinafter "Fort Lee" or "Army Base"), but was stationed in Georgia. Compl. ¶ 9. After dinner, he allegedly invited Ms. Hevener back to his barracks at the Army Base to watch a movie. Compl. ¶¶ 10–11. Ms. Hevener agreed to accompany him only after receiving his assurances that they would not engage in any intimate activity that night. Compl. ¶ 12. Given her previous experience visiting her sister, who was in the military, on Air Force bases in California and Maryland, Ms. Hevener believed the base was a safe environment. Compl. ¶¶ 15–16.

Once back in Sgt. Vazquez's barracks room at Fort Lee, Ms. Hevener was allegedly assaulted and raped. Compl. ¶ 22. During and after the assault, no Army personnel came to her aid. Compl. ¶¶ 25–26, 29. Ms. Hevener reported the assault immediately and submitted to a forensic examination that evening at an emergency room. Compl. ¶¶ 30–31. Meanwhile, Sgt. Vazquez drove back to his duty station in Georgia, where his body was recovered in an apparent suicide two days later, on October 3, 2014. Compl ¶ 33.

Plaintiff filed a timely administrative claim via a SF-95 on September 21, 2016. Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp.") [Dkt. # 9] at 3; Compl. ¶ 37. The Army acknowledged receipt, but, as of August

2

2017, had failed to adjudicate her claim.[1] Compl. ¶¶ 38–40. Plaintiff then filed a complaint in this Court under the Federal Torts Claims Act ("FTCA"), claiming that the Government is liable for the actions of Sgt. Vazquez because (1) the Army negligently supervised and trained Sgt. Vazquez, (2) the Army was vicariously liable for Sgt. Vazquez's actions, (3) the Army violated the Virginia Innkeeper's Statute (Va. Code Ann. § 35.12) by failing to protect guests within the Army barracks, and (4) the Army's actions caused plaintiff intentional and negligent infliction of emotional distress. *See generally* Compl. Currently before this Court is the United States' motion to dismiss the complaint. *See* Def.'s Mot. [Dkt. # 8].

## STANDARD OF REVIEW

Defendant has moved to dismiss plaintiff's complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). *See generally* Def.'s Mot. In such a situation, a court should consider the Rule 12(b)(1) jurisdictional challenges before the Rule 12(b)(6) arguments. *See United States ex rel. Settlemire v. District of Columbia*, 198 F.3d 913, 920–21 (D.C. Cir. 1999).

When a defendant files a motion to dismiss a complaint for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Because "subject-matter

---

[1] The government notably does not raise an exhaustion of administrative remedies defense. Because I dismiss her claims with prejudice on sovereign immunity grounds, I need not resolve whether, based on the scant record before this Court, plaintiff adequately pursued her claims through the administrative process.

3

jurisdiction is an 'Art[icle] III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). In considering a 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, a court need not limit itself to the complaint, but rather "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case." *Bank of America, N.A. v. FDIC*, 908 F. Supp. 2d 60, 76 (D.D.C. 2012) (quotation marks omitted).

## ANALYSIS

Defendant presents several arguments as to why this case should be dismissed. I need look no further, however, than the threshold jurisdictional issue of sovereign immunity.

"The United States is generally immune from suit unless there is explicit statutory waiver of its sovereign immunity." *Scruggs v. Bureau of Engraving & Printing,* 200 F. Supp. 3d 78, 82 (D.D.C. 2016) (citation omitted). Since "[s]overeign immunity is jurisdictional in nature," a claim barred by sovereign immunity lacks subject matter jurisdiction and is subject to dismissal under Rule 12(b)(1). *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994). It is plaintiff's burden to establish that sovereign immunity has been abrogated. *See Jackson v. Bush*, 448 F. Supp. 2d 198, 200 (D.D.C. 2006) (quoting *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d. 571, 575 (D.C. Cir. 2003)) ("[P]laintiff must overcome

4

the defense of sovereign immunity in order to establish the jurisdiction necessary to survive a Rule 12(b)(1) motion to dismiss.").

Plaintiff brings her claims under one avenue of statutory waiver—the Federal Tort Claims Act ("FTCA"). "The FTCA operates as a limited waiver of sovereign immunity, rendering the United States amenable to suit for certain tort claims, subject to various exceptions set forth in 28 U.S.C. § 2680." *Scruggs*, 200 F. Supp. 3d at 82 (citing *Millbrook v. United States*, 569 U.S. 50, 52 (2013); *Richards v. United States*, 369 U.S. 1, 6 (1962)). Relevant to this case is the FTCA's so-called "intentional tort exception," which "preserves the Government's immunity from suit for '[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.'" *Millbrook*, 569 U.S. at 52–53 (quoting 28 U.S.C. § 2680(h)).

Plaintiff initially tries to argue around the intentional tort exception by raising what she characterizes as a "negligent training and supervision" claim. Pl.'s Opp. at 5. Namely, that the United States should have better trained or supervised Sgt. Vazquez to prevent his brutal sexual assault. Yet plaintiff's claim faces several problems.

First, plaintiff's negligent supervision claim "sound[s] in negligence but stem[s] from a battery committed by a Government employee," and so falls under the intentional tort exception of § 2680(h). *United States v. Shearer,* 473 U.S. 52,

55 (1985).[2] Plaintiff "cannot avoid the reach of § 2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery." *Id.* This is because "[s]ection 2680(h) does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out* of assault or battery." *Id.* (emphasis in original). As the Supreme Court recognized in *Shearer*,

> There is no indication that Congress distinguished between "negligent supervision" claims and *respondeat superior* claims, with only the latter excluded under the Act. Instead it appears that Congress believed that §2680(h) would bar claims arising out of a certain type of factual situation—deliberate attacks by Government employees.

*Id.* (emphasis in original). Indeed, Courts have repeatedly rejected the idea that Congress intended for "the Government's liability for an assault and battery [to] turn[] on the adequacy of supervision or warnings." *Id.* at 56.

Tellingly, in addition to her negligent supervision claim, plaintiff raises an independent claim for vicarious liability. Pl.'s Opp. at 5. But these claims are distinguishable in name only. Both stem from the same root—the intentional "assault" and "battery" by a government employee, Sgt. Vazquez. "No semantic

---

[2] Plaintiff argues that *Shearer* only applies in the context of suits by military officials against the United States under something known as the *Feres* doctrine. Pl.'s Opp. at 7. While *Shearer* itself did concern a suit by a military official for damages against another member of the military, the Supreme Court's interpretation of the intentional torts exception has reached far beyond that context, including to situations such as this where a civilian is suing the government for the tortious actions of one of its employees. *See, e.g., Sheridan v. United States*, 487 U.S. 392, 393–94 (1988) ("obviously intoxicated" servicemember wandered out of Naval Hospital with loaded rifle and shot an automobile); *Bembenista v. United States*, 866 F.2d 493, 497–98 (D.C. Cir. 1989) (clinically blind patient alleged sexual assault by a medical technician employed by a Naval Hospital); *Doe v. United States*, 838 F.2d 220, 223–24 (7th Cir. 1988) (children at Air Force base day care center alleged sexual abuse by government employee).

6

recasting of events can alter the fact that the [assault and] battery was the immediate cause" of plaintiff's claimed damages, "and, consequently, the basis of [her] claim." *Shearer,* 473 U.S. at 55. "Take away the assault and there is no duty and no breach, two central elements of a negligence claim." *Doe,* 838 F.2d at 224. Such attempts to "disguise *respondeat superior* claims as 'negligent supervision' claims, sneaking them in through the courthouse back door," have been squarely rejected by the Supreme Court and our Circuit. *Doe,* 838 F.2d at 223 (citing *Shearer,* 473 U.S. at 55); *see also Kugel v. United States,* 947 F.2d 1504, 1506–07 (D.C. Cir. 1991) (adopting the reasoning in *Shearer* to find that "[i]n both cases…the intentional nature of the alleged torts…bars recovery"). Here, plaintiff's negligent supervision and vicarious liability claims arise from the employer-employee relationship between the Army and Sgt. Vazquez alone. As such, they cannot form the basis for liability under the FTCA.[3]

Plaintiff's only remaining avenue of relief is to allege that a "government duty [existed] to protect [her] prior to and independent of any assault" by Sgt. Vazquez. *Doe,* 838 F.2d at 225. Courts have allowed "negligence claims related

---

[3] Plaintiff also alleges that her IIED claim does not fall within the statutory exceptions to liability under § 2680(h). Pl.'s Opp. at 7. However, like her other claims, IIED stems from the intentional tort of assault and battery. As the Government rightfully points out, "[a] litigant may not substitute the name of a cause of action not included in Section 2680(h) for one that is included where the alleged breach of duties is identical." Def.'s Mot. at 8 (citing *Kugel,* 947 F.2d 1504). Her negligent infliction of emotional distress claim is no different. Merely alleging a negligent infliction of emotional distress does not mask the fact that her distress stemmed from the same assault by Sgt. Vazquez, and is thus also barred as a claim "arising from" an intentional tort.

to a Government employee's § 2680(h) intentional tort [to] proceed where the negligence arises out of an independent, antecedent duty unrelated to the employment relationship between the tortfeasor and the United States." *Bodin v. Vagshenian*, 462 F.3d 481, 488–89 (5th Cir. 2006) (quoting *Leleux v. United States*, 178 F.3d 750, 757 (5th Cir. 1999) (citing *Sheridan*, 487 U.S. at 402)); *see also Bembenista*, 866 F.2d at 497 (citing *Sheridan*) (allowing plaintiff to "proceed on a theory that the government is liable for breach of duty to a hospital patient to whom it owed a special obligation of protective care"). Plaintiff must therefore establish a separate duty of care that is unrelated to the unfortunate events that led to Sgt. Vazquez's alleged assault and battery. *Doe,* 838 F.2d at 224 (duty existed where "if we remove the assault from the equation, the government's duty still exists"); *Bodin*, 462 F.3d at 490 (citing *Bembenista*, 866 F.2d at 493) ("duty that the United States allegedly breached, therefore, was not one that stemmed from the employment relationship with the assailant"). Unfortunately, she cannot.

Plaintiff attempts to establish such an independent duty under the arguably-defunct Virginia Inkeeper's Statute,[4] Compl. ¶¶ 74–80, or alternatively under "negligence at common law," Compl. ¶¶ 81–88, by virtue of her status as a visitor on the Fort Lee Army Base. To evaluate these claims, I must look to Virginia law as the law of the state where the incident occurred. 28 U.S.C. § 1346(b). Like many states, Virginia does not recognize a general duty to control the conduct of

---

[4] Plaintiff concedes that the Inkeeper's Statute, Va. Code Ann. § 35.12, is preempted by a newer provision, Va. Code. Ann. § 35.1, which regulates Hotels, Restaurants, Summer Camps, and Campgrounds. *See* Pl.'s Opp. at 13.

8

third persons from causing physical harm to another "unless…a special relation exists between the actor [the Government] and the other [the plaintiff] which gives to the other a right to protection." *Harrison v. Bittler*, 72 Va. Cir. 7 (Cir. Ct. 2006) (quoting Restatement of Torts (Second) § 315 (1965)).[5] Here, the Government owed plaintiff no such special duty of care.

Despite her best attempts, plaintiff cannot establish that she was a guest in a "hotel" under Va. Code Ann. § 35.1-1. It should go without saying that the Army does not offer its barracks "to the public for compensation transitory lodging or sleeping accommodations, overnight or otherwise." *Id.* Plaintiff does not allege that she offered any form of compensation to stay on the Army Base, or indeed that she stayed there overnight. Fort Lee, like most military bases, did not hold itself out as a lodging available to the public, with all that public accommodation would entail. *See* Army Regulation 190-16 ¶¶ 2.2 (allowing commanders to deny access to members of the public for safety reasons). Plaintiff therefore cannot allege that the Army owed her a duty under this provision of Virginia law.

Nor can plaintiff allege that she was owed a special duty of care as a "visitor" to a military base beyond that owed to any member of the public. Plaintiff argues that because military bases are not generally open to the public and "the public at large cannot travel through the base at will," the Government owed her a special duty once she became an authorized visitor on the base. Pl.'s

---

[5] To the extent plaintiff bases these negligence claims on a special relationship between the United States and Sgt. Vazquez, such claims are based on nothing more than the employer-employee relationship, and thus suffer the same fate as her negligent supervision claims, being barred by the FTCA.

9

Opp. at 15. Yet plaintiff does not allege facts establishing that she was anything more than a "licensee"—a permitted visitor—at Fort Lee. *Harrison*, 72 Va. Cir. at 11 ("Virginia law imposes no duty on a social host to protect a social guest [licensee] from third party criminal assaults").[6] The Government's apparent willingness to allow her access to the base, as a guest of a military servicemember, is not distinguishable from the access permitted to any member of the public. Moreover, although plaintiff speculates that the Army knew of Sgt. Vazquez's alleged pattern of assault and thus owed her some further duty of care, she has failed to allege facts that would support that claim. Plaintiff has failed to name or even describe any witnesses to the assault, any Army personnel she saw on-base after the assault, or indeed any particular individual who knew or should have known about Sgt. Vazquez's alleged prior behavior. Without these facts, plaintiff cannot show that the Government owed her a "good Samaritan" duty to protect against someone who was a known immediate threat to the community. *See Sheridan*, 487 U.S. at 401 (finding such a duty existed where a servicemember who was "obviously intoxicated" was allowed to leave a hospital with a loaded rifle and another government employee witnessed his departure). Because plaintiff does not plausibly allege that the Government owed her an independent duty of care, I must conclude that she has failed to establish negligence under

---

[6] The Government owes no "general affirmative duty, applicable to all members of the public, to act to protect a person in peril from the intentional harmful conduct of another." *Thigpen v. United States*, 800 F.2d 393, 398 (4th Cir. 1986).

Virginia law. *Marshall v. Winston*, 239 Va. 315, 318 (1990).[7] As such, the sole legal basis of her claims is the intentional tort committed by Sgt. Vazquez, and her suit is therefore barred by sovereign immunity pursuant to § 2680(h) of the FTCA.

## CONCLUSION

Because this Court lacks subject matter jurisdiction, defendant's Motion to Dismiss must be GRANTED with prejudice. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[7] Notably, plaintiff has made no allegation that the Army Base breached a duty of care that it ordinarily would have owed to visitors on the base, such as floor safety. *See, e.g.*, *Hayden v. United States*, 21 F. Supp. 3d 37, 40 (D.D.C. 2014). Such duties are foreseeable and reasonable. Preventing a violent sexual assault by a soldier is not.